UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN NIESEN, as Personal Representative
for the Estate of Michael Scott Niesen,
deceased; JOHN NIESEN, individually;
MARY F. RILEY, individually,

    Plaintiffs,

v.                                          Case No. 8:08-cv-1599-T-30TBM

CITY OF CLEARWATER; MICHAEL
EGGER; MARK CAIRNS; EDWARD
GARNER; JAMES GRAVELY; CHARLES
BUTLER,

    Defendants.
_____/

## ORDER

    THIS CAUSE comes before the Court upon Defendants Charles Butler, Michael Egger and James Gravely's Motion to Dismiss Count I and II (Dkt. #16), Plaintiffs' Response to Butler, Egger and Gravely's Motion to Dismiss (Dkt. #20), City of Clearwater's Motion to Dismiss Complaint (Dkt. #17), Plaintiffs' Response to Motion to Dismiss Complaint (Dkt. #19), Defendant Mark Cairns Motion to Dismiss Counts I and II (Dkt. #18), Plaintiffs' Response to Cairns' Motion to Dismiss (Dkt. #20), City of Clearwater's Memorandum in Support of Motion to Dismiss/ Motion for Summary Judgment (Dkt. #37), Affidavit of Veronica Hunt (Dkt. #38), Plaintiffs' Response to Dispositive Motion for Summary Judgment by Defendants Cairns, Egger, Butler and Gravely and incorporated

exhibits and affidavits (Dkts. #39 and 40), Defendant Edward Garner's Motion to Dismiss Counts I and II and Dispositive Motion for Summary Judgment (Dkt. #43), and Plaintiffs' Response to Motion to Dismiss (Dkt. #45). Defendant's motions to dismiss present matters outside of Plaintiffs' Complaint, thus this Court shall treat such motions as those for summary judgment under Rule 56. Pursuant to Rule 12(b), the parties have been provided a reasonable opportunity to present all material pertinent to the issue of whether Plaintiffs' claims are time barred by the statute of limitations for personal injury actions in Florida. The Court, having considered the motions, responses, affidavits, exhibits, Complaint, and being otherwise advised in the premises, concludes that Defendants' motions should be granted in part and denied in part as stated herein.

**Background.**

This claim arises out of the alleged beating death of Decedent Michael Scott Niesen ("Decedent"), by City of Clearwater police officers in 1977. The Plaintiffs are John Niesen and Mary Riley, individually, and the Estate of Michael Scott Niesen (the "Estate"). John Niesen is Decedent's brother, and Mary Riley is Decedent's mother. The Defendants are the City of Clearwater, Mark F. Cairns ("Cairns"), Michael J. Egger ("Egger"), Edward R. Garner ("Garner"), James H. Gravely ("Gravely"), and Charles Butler ("Butler"). At all times material to the Complaint, Cairns, Egger, Garner, Gravely and Butler were employed as police officers with the Clearwater Police Department ("CPD").

It is undisputed that on July 13, 1977, Decedent was driving a pick up truck in Clearwater when he was stopped for speeding by CPD Officer Mahoney. Officer Mahoney

issued a traffic citation. Before Decedent started driving away Officer Mahoney received information that the pick up truck had been reported stolen. When Officer Mahoney attempted to re-approach the pick up truck Decedent started driving away at a high rate of speed, at which time Officer Mahoney jumped onto the back of the pick-up truck. In an attempt to throw or shake Officer Mahoney from the back of the truck, Decedent began driving erratically along the highway, and ultimately lost control of the truck which flipped over onto Officer Mahoney. Officers Cairns arrived at the scene as the truck was flipping. Officer Cairns immediately called for help at 10:03pm, and then parked his cruiser next to Officer Mahoney's body and attempted to revive him with negative results. Several minutes later Officers Egger and Garner arrived at the scene. At this point, Plaintiffs' and Defendants' stories diverge.

*Plaintiffs' Allegations.*

Plaintiffs allege that after the pick up truck flipped Decedent was hand cuffed and sitting on the side of the road by a tree. Plaintiffs claim that Decedent was conscious, coherent and relatively unharmed from the car accident. Plaintiffs further claim that once the officers realized the extent of Officer Mahoney's injuries they became enraged at Decedent and took Decedent behind the pick up truck and beat him severely with their night sticks and flashlights. Plaintiffs allege that one of the officers pulled his gun and forced it into Decedent's mouth causing teeth to be broken and lodge in his throat. At some point, Plaintiffs claim that other officers ran over to stop the beating of Decedent and paramedics arrived to treat his injuries.

*Defendants' Incident Reports.*

Defendants' incident reports convey a different account. According to Officer Garner's incident report, Decedent was located on the side of the road when he arrived at the scene. Officer Cairns' report states that he attempted to help Decedent by bracing his head back and clearing his airway, until paramedics arrived. Officer Egger's report does not mention Decedent, rather it focuses on his attempts to revive Officer Mahoney. Officer Gravely's investigative supplemental report states that Decedent was thrown from the vehicle. Officer Butler's supplemental report simply states that paramedics advised him that Decedent did not regain consciousness from the accident scene to the hospital.

*Plaintiffs' and Defendants' Accounts Realign.*

The first fire rescue unit arrived on the scene at 10:07 pm. The first unit began to treat Officer Mahoney since he appeared to be in more critical condition. The second fire rescue unit arrived at 10:12 pm. A Clearwater Fire Rescue Report states that Decedent was lying on the side of the road, in critical condition, unconscious, respiration was labored, and he had moderate bleeding. Fire rescue removed broken teeth that were lodged in Decedent's throat restricting his breathing and treated a head injury that was bleeding. Decedent was taken by paramedics to the hospital were he died the following day.

**Standard of Review.**

Defendants' motions to dismiss pursuant to Rule 12(b)(6) shall be construed by this Court as motions for summary judgment to the extent such motions relate to the issue of whether Plaintiffs' claims are time barred by Florida's four-year statute of limitations. Such

defense presents matters outside the allegations of the complaint, thus Defendants' motions to dismiss shall be treated by this Court as motions for summary judgment and disposed of as provided in Rule 56. *See* Fed.R.Civ.P. 12(b)(6). All parties have been given reasonable opportunity to present all material made pertinent to a motion for summary judgment.

Summary Judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's determination that no genuine issue of material fact exists shall be based on the totality of the evidence presented in the "pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits submitted." *Id.* A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must go beyond the pleadings to show that a genuine issue exists for trial. *Id.* The non-moving party must come forward with evidence sufficient to establish the existence of the essential elements of its case, which the non-moving party will have the burden to prove at trial. *Id.* The evidence

presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**Discussion.**

In the Complaint, Plaintiffs bring four causes of action. Count I alleges an action against all Defendants based on a violation of Plaintiffs' right of access to courts under 42 U.S.C. § 1983. Count II alleges an action against Defendants Egger, Cairns, Garner, Gravely and Butler for conspiracy in violation of 42 U.S.C. § 1983. Count III alleges an action against the City of Clearwater for excessive force in violation of 42 U.S.C. § 1983. Count IV alleges an action against the City of Clearwater on the grounds of a deprivation of Plaintiff Mary Riley's liberty interest in a continued relationship with her son in violation of 42 U.S.C. § 1983.

Defendants argue that all counts should be barred by the four (4) year statute of limitations for personal injury actions in Florida.

In response, Plaintiffs' argue that their complaint is timely because the "continuing violation doctrine" permits them to sue on an otherwise time-barred claim when the violation alleged involves continuing injury. Plaintiffs allege that in order to cover up their crimes and to deflect attention away from the unjustified beating and wrongful death of Michael Scott Niesen, initial responding CPD officers and detectives conspired to author false, fraudulent,

incomplete, misleading and deceptive reports, memorandum and other official documents and writings under color of law that falsely and fraudulently claimed and maintained that Michael Scott Niesen was rendered unconscious as a result of the accident, that he never regained consciousness and omitted the role CPD played in Niesen's death. Plaintiffs further allege that the City of Clearwater ratified the fraudulent reports propounded by the CPD and the actions taken by the officers involved in the death of Niesen by failing to thoroughly review the matter, discipline its officers and refer the offending officers to the State Attorney's Office for prosecution for the murder and/or cover-up of the murder of Niesen. As a result of the alleged on-going conspiracy between Defendants Egger, Cairns, Garner, Gravely and Butler to cover-up the facts of Niesen's death, Plaintiffs allege that they have been prevented from bringing lawsuits against the responsible officers under Florida's Wrongful Death Act and under 42 U.S.C. § 1983.

**I.     Appropriate Statute of Limitations.**

The Court adheres to the long standing precedent which provides that where the federal act upon which a plaintiff relies does not contain a statute of limitations, federal courts must rely on the limitations period prescribed by the state in which the litigation arose. *Sewell v. Grand Lodge of Int'l Ass'n of Machinist & Aerospace Workers*, 445 F.2d 545, 548 (5th Cir. 1971). Since § 1983 does not contain a statute of limitations, the court must look to state law for the appropriate limitations period. *See Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984); *see also* 42 U.S.C.A § 1988 (directing courts in Section 1983 actions to apply the most appropriate and analogous state statute of limitations). For the purpose of selecting the

proper state limitations period, a § 1983 claim should be characterized as an action for personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).

## II. Accrual of Claim Under the Continuing Violation Doctrine.

The question of when the limitations period begins to run (that is, when the cause of action has accrued), is one of federal law. *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996). The general federal rule is that a cause of action "will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003), citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). In analyzing this issue, a court must first identify the alleged injuries, and then determine when the plaintiff could have sued for them. *Rozar*, 85 F.3d at 562.

An exception to the general rule is the "continuing violation doctrine." *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003). "The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001). "If any event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing [suit] with respect to that event or series of events." *Id.*

The critical distinction in continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does. *See Eaton v. Keith*, 154 Fed. Appx. 844 (11th Cir. 2005). "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Parrish v. City of Opp, Alabama*, 898 F.Supp. 839, 843 n. 2 (M.D. Ala. 1995), citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981); *see also, e.g., Lorance v. AT&T Technologies*, 490 U.S. 900 (1989) (holding that the continuing effects of a past harm do not bring the claim within the continuing violation doctrine); *Altair Corp. v. Pesquera De Busquets*, 769 F.2d 30, 32 (1st Cir. 1985) (Continuing violations are "occasioned by continuing unlawful acts, not by continued ill effects from an original violation."). "Where a continuing violation is found, the plaintiffs can recover for any violations for which the statute of limitations has not expired." *Knight v. Columbus, Ga.*, 19 F.3d 579, 581 (11th Cir. 1994).

### A. Right of Access to Court (Count I).

Access to the courts is clearly a constitutional right, grounded in the First and Fourteenth Amendments. *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002). To pass constitutional muster, access to the courts must be more than merely formal; it must also be adequate, effective, and meaningful. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). In *Bell v. Milwaukee*, the Seventh Circuit observed that to deny access to the courts,

> defendants need not literally bar the courthouse door or attack plaintiffs' witnesses. This constitutional right is lost where, as here, police officials shield from the public and the victim's family key facts which would form the

> basis of the family's claims for redress. A contrary interpretation of the right to due process would encourage police officials to conceal the circumstances relating to unlawful killings committed under color of state law and other deprivations of federal rights which Section 1983 was designed to remedy.[1]

Thus, interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under 42 U.S.C. §§ 1983 and 1985. *See Flores v. Satz*, 137 F.3d 1275, 1278 n.7 (11th Cir. 1998) (distinguishing between officials who intentionally conceal facts and those who fail to investigate fully); *Ryland v. Shapiro*, 708 F.2d 967, 973 (5th Cir. 1983) (allegation "that agents of the state intentionally engaged in conduct that interfered with [the plaintiffs'] exercise of their constitutionally protected right to institute a wrongful death suit" offered a valid theory of recovery).

Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 n. 2 (11th Cir. 2002). A cause of action under these sections will not accrue, and thereby set the limitations clock running, until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury. *See Mullinac v. McElhenny*, 817 F.2d 711, 716 (11th Cir. 1987).

Decedent's death occurred on July 14, 1977. On the same day, John Niesen and Mary Riley met with Detective Butler at Morton Plant Hospital. Detective Butler spoke to Decedent's family and explained what had happened the night before. Butler's report states,

---

[1] *Bell v. Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1987); *see also Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

in pertinent part, "She [Riley] acknowledged that she understood and she stated that it was hard for her to believe that her son had received these injuries during the accident and that she suspected foul play by the Police Dept."[2]

On July 10, 1979, John Niesen told Sgt. Glover of the CPD that he had reason to believe that his brother's death was not the result of the accident and that there was more to the incident than what the police claimed.[3] He told Glover that he had reason to believe that one of the CPD officers beat his brother to death in the ambulance on the way to the hospital, and he claimed that two witnesses told him that they saw his brother at the scene of the accident breathing and with no sign of bleeding.[4] During the same conversation John Niesen also told Glover that he and his lawyer had been allowed to see a copy of CPD's Official Police Report which was sent to the Marietta Police Department and that he was considering hiring a lawyer and filing a wrongful death suit against the Clearwater Police Department.[5]

On September 6, 1979, John Niesen called CPD again and spoke with Sgt. Dowling. He told Sgt. Dowling that he had hired an attorney to look into the events surrounding the death of his brother and insinuated that CPD's investigation was incomplete, inaccurate and that there was possibly a cover-up.[6] Niesen stated that he based his assumptions on witnesses

---

[2] Dkt. #39-5.

[3] *See* Dkt. #17-2.

[4] *See id.*

[5] *See id.*

[6] *See id.*

that he had spoken to that were never contacted by the police, and witnesses that he had spoken to that now claim that information and statements in CPD's reports conflicted with what the witnesses observed.[7] Niesen again stated that he had obtained copies of some of CPD's supplemental reports from the Georgia Police Department and the vehicle accident report. During the conversation, Niesen claimed that he had knowledge of the following information: (1) a police officer at the scene after viewing the bodies became so incensed that he had to be restrained by another officer; (2) his brother had no visible cuts or bleeding at the scene, however, when he arrived at the hospital he had cuts and was bleeding; (3) an officer rode to the hospital in the ambulance; (4) it took 10 minutes for his brother to arrive at the hospital due to the ambulance breaking down; and (5) the vehicle accident report diagram is false and does not truly indicate the positions of the bodies after the accident, according to eye witnesses.[8]

The record establishes that as of September 6, 1979, Plaintiffs were fully aware of a possible cover-up occurring in the Clearwater Police Department. Plaintiffs made numerous phone calls, inquiries, personal investigations, spoke to witnesses, hired lawyers, obtained police reports and the relevant vehicle accident report, and even went so far as to threaten to file a wrongful death suit. The "information" Niesen claimed to have obtained prior to

---

[7] *See id.*

[8] *See* Dkt. #17-2.

September 6, 1979, mirrors the allegations contained in Plaintiffs' complaint herein.[9]

Plaintiffs chose, however, not to file suit in 1979. In an affidavit filed by John Niesen herein, Niesen states, in pertinent part:

> I had no evidence to support the claims alleged in this lawsuit until October 30, 2006, when Edward Garner, a former police officer for the Clearwater Police Department who was one of the first responding officers on the scene, admitted that he and other officers engaged in an intentional cover-up of my brother's death, ordered and approved by their superior officers at the CPD.[10]

Such statement is directly contradicted by John Niesen's multiple claims and complaints in 1979 that a CPD officer had beaten his brother badly out of rage, he had witnesses stating that their recollections did not correspond with police reports, the vehicle accident report was incorrect, and he suspected a cover-up by CPD and its officers.[11]

The record before the Court establishes that for three decades Plaintiffs continued to complain to the Clearwater Police Department, Internal Affairs, the Clearwater Fire Department, the FBI, the Pinellas County State Attorney's Office, the Governor of Florida's Office, and numerous other officials and government organizations reiterating their evidence against CPD concerning Michael Niesen's injuries, eye witness statements contradicting police reports, and a cover-up by the initial responding officers.

---

[9] The primary difference is that Plaintiffs' theory of his brother being beaten by an officer in the ambulance evolved to one of his brother being beaten by an officer (or several officers) prior to the arrival of the paramedics.

[10] Dkt. #39-2.

[11] "Mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." *See Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

- On October 25, 1989, John Niesen told Clearwater Deputy Chief Desmarais that he had spoken to several witnesses who said that his brother was conscious and sitting against a palm tree unharmed, but arrived at the hospital with seven inch gashes on his head.[12]

- On October 26, 1989, Plaintiffs' attorney spoke to a staff assistant at the Clearwater Fire Department and told her that he had statements from many witnesses that Michael Niesen was beaten and rendered unconscious between the time he left the scene and arrived at the hospital and Plaintiffs' attorney claimed to have enough evidence to bring a criminal case.[13]

- On March 20, 1991, John Niesen spoke to a staff assistant at the Clearwater Fire Department and repeated his claim that Michael Niesen arrived at the hospital in a different condition than when he left the scene and stating that he had proof the CPD's reports about the incident were "bogus".[14]

- On July 11, 2002, John Niesen wrote former United States Senator Zell Miller of Georgia claiming that Officers Cairns, Egger and Garner beat his brother while his hands were handcuffed behind his back causing multiple injuries and then denied

---

[12] Dkt. #17-3.

[13] *See id.*

[14] *See* Dkt. #17-3.

medical treatment to his brother.[15] John Niesen asserted that Decedent was rendered unconscious by the beating and that it stopped only after bystanders intervened. John Niesen further claimed that by the time Michael Niesen arrived at the hospital he had received "massive open head wounds, broken ribs, a tear of the aorta and a blow to the bone below his eye".[16] The letter is several pages long and explains Plaintiffs' "evidence" that CPD officers caused his brothers death.

- On September 18, 2002, John Niesen told Deputy Chief Weinreich that he was convinced that police officers "took justice into their own hands" and fatally beat his brother in retaliation for their fellow officers' death. John Niesen claimed to have new witnesses to support his version of the events.[17]

- On September 23, 2002, John Niesen sent a fax to Clearwater Mayor Frank Hibbard stating that he now had eyewitnesses to the beating of his brother by CPD officers.[18]

Notably, Plaintiffs do not refute that these conversations have taken place or that they have made numerous complaints as well as multiple requests for official reports and internal investigations over the past thirty years.

Accordingly, the record evidence before this Court establishes that Plaintiffs knew or reasonably should have known more than four years before the Complaint was filed herein

---

[15] *See* Dkt. #17-2.

[16] *Id.*

[17] *See* Dkt. #17-4.

[18] *See* Dkt. #17-2.

(August 14, 2008) that they had claims under § 1983 for denial of access to courts. It appears that Plaintiffs' right of access to courts claim began to accrue, and thereby set the limitations clock running, when Plaintiffs learned: (1) Michael Niesen had been unharmed after the accident but had serious injuries when he arrived at the hospital, (2) one of the officers had to be restrained from attacking Niesen because the officer was enraged over the death of his fellow officer, and (3) the police officers involved were authoring inaccurate reports that contradicted eye witness statements. At least by September 1979, Plaintiffs were aware of these events. Such awareness would have alerted a reasonable person to act to assert their rights at such time. Plaintiffs cannot now rely on the continuing violation doctrine to overcome the statutory requirement of filing suit with respect to the discovery of those events. Thus, this Court concludes that Plaintiffs' right of access to court claim began to accrue on September 6, 1979, and therefore, is barred by Florida's four-year statute of limitations period.

### B. Excessive Force (Count III) and Deprivation of Liberty Interest in a Continued Relationship with Son (Count IV).

Similarly, Plaintiffs' claims in Counts III and IV are barred by Florida's four-year statute of limitations period. The critical distinction in a continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does. *See Eaton*, 154 Fed. Appx. 844. "A continuing violation is occasioned by

continual unlawful acts, not by continual ill effects from an original violation." *Parrish*, 898 F.Supp. 839, 843 n. 2.

In Counts III and IV, Plaintiffs complain of continuing ill effects from an alleged original violation that occurred in 1977. Plaintiffs have not alleged further continuing unlawful acts by Defendants that would toll the running of Florida's four-year limitations period in relation to allegations of excessive force[19] or deprivation of a liberty interest in a continued relationship with Mary Riley's son. The record reflects that Plaintiffs suspected as early as the day of Michael Niesen's death on July 14, 1977, that Michael Niesen had suffered the injury that forms the basis of their complaint and a CPD officer inflicted the injury. The record also reflects that Plaintiffs were aware as of September 6, 1979, that (1) Michael Niesen appeared to be unharmed after the accident but had serious injuries when he arrived at the hospital, (2) one of the officers had to be restrained from attacking Niesen because the officer was enraged over the death of his fellow officer, and (3) the police officers involved were authoring inaccurate reports that contradicted eye witness statements. Thus, this Court concludes that Plaintiffs' claims relating to excessive force and deprivation of a liberty interest in a continued relationship with a son began to accrue on September 6, 1979, and therefore, are barred by Florida's four-year statute of limitations period.[20]

---

[19] If Michael Niesen was severely beaten by a CPD officer the night of July 13, 1977, then such excessive force occurred on July 13, 1977. Plaintiffs have not alleged nor does the record reflect instances of the possibility of further acts of excessive force against Michael Niesen.

[20] Even if Count IV was not barred by the applicable statute of limitations, this Court doubts the viability of an action under § 1983 when based on a claim of deprivation of liberty interest in
(continued...)

### C. Conspiracy (Count II).

Plaintiffs allege, in pertinent part, that Egger, Cairns, Garner, Gravely and Butler (the "CPD Officers") while acting under color of state law conspired with one another and other officers from the CPD to author fraudulent, inaccurate or incomplete reports and to undertake efforts to cover-up the murder of Michael Niesen. Plaintiffs also allege that by covering up the fact that the CPD Officers murdered Michael Niesen, the CPD Officers deprived Plaintiffs from bringing lawsuits against the responsible officers under Florida's Wrongful Death Act and under 42 U.S.C. § 1983. Plaintiffs claim that as a direct and proximate cause of the cover-up by the CPD Officers Plaintiffs suffered economic and non-economic damages in investigating the truth behind the murder of Michael Niesen.

The elements of a Section 1983 conspiracy claim are: (1) a violation of Plaintiffs' federal rights; (2) an agreement among the defendants to violate such right; and (3) an actionable wrong. *See Geidel v. City of Bradenton Beach*, 56 F.Supp.2d 1359, 1367 (M.D. Fla. 1999). Plaintiffs sufficiently allege the elements of a § 1983 conspiracy claim.

Plaintiffs claim that they first learned of an agreement to coordinate the reports of the incident and a meeting where officers were told what to put in their reports after a

---

[20](...continued)
a continued relationship between a mother and her adult son. Michael Niesen was over 18 years old at the time of his death. *See Robertson v. Hecksel*, 420 F.3d 1254, 1255-56 (11th Cir. 2005) (Where a mother sued the city and a police officer in her individual capacity under Section 1983 alleging that the officer's wrongful shooting of her adult son during a traffic stop violated her liberty interest in a continued relationship with her son, the Eleventh Circuit affirmed summary judgment against the mother and held that the Fourteenth Amendment's substantive due process protections do not extend to the relationship between a mother and her adult son.).

conversation with Garner in October 2006.[21] In Paragraph 97 of the Complaint, Plaintiffs allege:

> Michael Egger, Mark Cairns, Edward Garner, James Gravely and Charles Butler while acting under color of state law conspired with one another and other officers from the Clearwater Police Department to author fraudulent, inaccurate or incomplete police reports and to undertake efforts to cover-up the murder of Michael Scott Niesen.[22]

Plaintiffs' allegations imply that the CPD officers made an agreement to keep certain facts secret in order to cover-up the truth behind the death of Michael Scott Niesen. Of course, there well may be innocent explanations for a meeting among the officers the day after a double fatality of an officer and a citizen.

While Garner claims to have no knowledge of violence against Niesen on the part of any CPD officer, Plaintiffs have not had the opportunity to take sworn depositions of the CPD Officers or otherwise conduct discovery in relation to the existence of a continuing conspiracy. The continuing violation doctrine is premised on the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated. *Hipp*, 252 F.3d 1208, 1222. For these reasons, the Court concludes, that it will deny the motions for summary judgment as to Plaintiffs' allegations in Count II without prejudice to permit discovery. The Court will revisit this issue after discovery by the parties.

It is therefore ORDERED AND ADJUDGED that:

---

[21] *See* Audio-taped Interview of Edward Garner, Dkt. #39-4, Page 24.

[22] Dkt. #1.

1. Defendants Charles Butler, Michael Egger and James Gravely's Motion to Dismiss Counts I and II (Dkt. #16), Defendant Mark Cairns Motion to Dismiss Counts I and II (Dkt. #18), Defendant Edward Garner's Motion to Dismiss Counts I and II and Dispositive Motion for Summary Judgment (Dkt. #43) construed by this Court as motions for summary judgment are **GRANTED IN PART AND DENIED IN PART** as stated herein. Counts I, III and IV are barred by Florida's four-year statute of limitations. Defendants' motions to dismiss, or in the alternative, motions for summary judgment are denied without prejudice as to Count II relating to Plaintiffs' Section 1983 conspiracy claim against Defendants Egger, Cairns, Garner, Gravely and Butler.

2. City of Clearwater's Motion to Dismiss Complaint (Dkt. #17) construed by this Court as a Motion for Summary Judgment is **GRANTED**. All claims against Defendant City of Clearwater are barred by Florida's four-year statute of limitations.

3. The Clerk is directed to **TERMINATE** Defendant City of Clearwater as a party in this case.

4. The Clerk is also directed to enter **JUDGMENT** in favor of Defendant City of Clearwater and against Plaintiffs.

**DONE** and **ORDERED** in Tampa, Florida on April 20, 2009.

*[signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2008\08-cv-1599.mtd construed as msj 16 17 18 43.wpd